IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAVIER A. RIOS,

        Plaintiff,

vs.                                            Civil No. 06-717 RHS

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

    1.  **THIS MATTER** comes before the Court on Plaintiff's Motion to Reverse or Remand

Administrative Agency Decision ("Motion"), filed February 2, 2007 **[Doc. No. 13]**.  Plaintiff

seeks judicial review of the final decision of the Commissioner of Social Security

("Commissioner") denying Plaintiff's application for Social Security Disability Insurance

Benefits ("DIB").

    2.  On October 24, 2003, Plaintiff submitted a claim for disability benefits, alleging a

disability which commenced on October 8, 2002 due to his "[l]eft leg, mental health, depression,

[and] back."  (Tr. at 61-63, 70).  Plaintiff was born on March 27, 1981, completed ninth grade,

and has worked as a produce clerk and produce manager.  (Tr. at 61, 71, 441).

    3.  On February 17, 2006, the ALJ issued a decision finding that Plaintiff was not entitled

to disability benefits.  The ALJ concluded that despite Plaintiff's impairments, "there are jobs

that exist in significant number[s] in the national economy that the claimant can perform [and

thus, he] . . . . has not been under a 'disability,' as defined in the Social Security Act, from

October 8, 2002 through the date of" the ALJ's decision.  (Tr. at 24 ¶ 10; 25 ¶ 11 (citations

omitted)).

4.  On June 19, 2006, the Appeals Council denied Plaintiff's request for review, (tr. at 5), thus rendering the ALJ's decision the final decision of the Commissioner, see Doyal v. Barnhart, 331 F.3d 758, 759 (10th Cir. 2003).  The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence.[1]  Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests.  Id.  (citation omitted).

5.  "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity."  Thompson, 987 F.2d at 1486 (citing 42 U.S.C. § 423 (d)(1)(A)); see also 42 U.S.C. § 1382c(a)(3)(A).  Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920.  The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled.  Id. (citations omitted).

6.  At the first four levels of the evaluation, the claimant must show:  (1) that he is not working; (2) that he has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he is unable to perform work done in the past.  At the fifth step, the Commissioner must produce evidence regarding the claimant's

---

[1]Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1028 (10th Cir. 1994) (internal quotations and citations omitted).  "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence."  O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994) (citation omitted).

ability to perform other work.  Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

7.  At step two of the sequential evaluation, the ALJ found that Plaintiff "has the following 'severe' impairments: status post left tibia and fibula fracture, back and left lower extremity pain, scoliosis of the thoracic and lumbar spine, lumbar spondylosis with facet arthropathy, chronic pain, depression, and drug abuse."  (Tr. at 15).  At step three, the ALJ found that Plaintiff did not have any impairment or combination of impairments that met or medically equaled a listed impairment.  In assessing Plaintiff's residual functional capacity ("RFC"), the ALJ concluded that Plaintiff has the RFC "to perform simple, unskilled work[2] through the light exertional level.[3]"  (Tr. at 19 ¶ 5).  At step four, the ALJ found that Plaintiff's RFC precluded him from performing his past relevant work.  At step five, the ALJ determined that based on Plaintiff's RFC "for the full range of light work, [and] considering the claimant's age, education, and work experience, a finding of 'not disabled' is directed by Medical-Vocational Rules [("Grids")] 202.18 and/or 202.19."  (Tr. at 25).

8.  Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ failed to meaningfully address Plaintiff's chronic pain disorder; (2) the ALJ's RFC

---

[2]In addressing Plaintiff's mental RFC, the ALJ found that Plaintiff has "at most a *moderate* restriction on his activities of daily living . . . . *moderate* difficulties in maintaining social functioning . . . . *moderate* difficulties in maintaining concentration, persistence, or pace . . . . [and] *no* evidence that claimant has had any episodes of decompensation."  (Tr. at 18-19 (emphasis added)).  The ALJ determined that Plaintiff "is able to perform work involving simple, repetitive tasks [and noted that] . . . . claimant's own statements show that he . . . is capable of performing the *limited, superficial interactions* of simple, unskilled work."  (Tr. at 23-24 (emphasis added)).

[3]The ALJ found that the objective medical evidence and Plaintiff's daily activities are "consistent with the [Plaintiff's] ability to perform a full range of light work."  (Tr. at 20, 23).

finding is unsupported by substantial evidence and legally erroneous[4]; (3) the ALJ's conclusive application of the Grids at step five was unsupported by substantial evidence and legally erroneous; and (4) the ALJ's credibility finding is unsupported and legally erroneous.

### Medical Opinion Evidence

9.  I will first address Plaintiff's allegations of error concerning the assessment of medical opinion evidence.  The ALJ's findings regarding this evidence potentially influence the ALJ's assessment of Plaintiff's credibility and RFC, which will potentially impact the ALJ's decision regarding whether and how to utilize the Grids at step five of the sequential evaluation. Plaintiff contends that the ALJ erred in considering the opinions of the following physicians and psychologist regarding Plaintiff's limitations: W. Murray Ryan, M.D., William L. Ritchie, M.D., Carlos J. Esparza, M.D., and Elliot J. Rapoport, Ph.D.[5]

10.  An ALJ is required to give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence.  Castellano v. Secretary of Health and Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994).  However, "[e]ven if a treating physician's opinion is not entitled to controlling weight, treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R.] § 404.1527."[6]  Langley v. Barnhart, 373 F.3d 1116, 1119 (10th Cir.

---

[4]Plaintiff alleges that in determining Plaintiff's RFC, the ALJ incorrectly assessed several medical opinions offered by treating source physicians.

[5]The parties apparently do not dispute that Drs. Ryan, Esparza and Rapoport provided "treating source" medical opinions.  However, while the records indicate that Dr. Ritchie examined Plaintiff on more than one occasion, it is not entirely clear whether the ALJ or the parties consider him one of Plaintiff's treating physicians.

[6]"Those factors are:  (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment

2004) (citations, internal quotation marks and internal brackets omitted). "If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Id.

11. Plaintiff challenges the ALJ's decision assigning "no significant weight" to Dr. Ryan's July 27, 2005 opinion set forth in a "Form: Medical Source Statement of Ability to Do Work-Related Activities (Physical)" indicating that Plaintiff's functional capacities limit him to less-than-sedentary work. (Tr. at 424-27). The ALJ discounted Dr. Ryan's opinion as follows:

> I give Dr. Ryan's opinion no significant weight because it is conclusory, not supported by objective findings, and not consistent with the record as a whole, including evidence of symptom magnification. I emphasize that Dr. Ritchie's and Dr. Diskant's evaluations concluded that that [sic] the claimant can perform work in the light exertional category and that Dr. Woog's mild to moderate objective findings do not support Dr. Ryan's conclusions. Dr. Esparza found the claimant's antalgic gait could not be explained by the physiological findings (Exhibit 12-F, p.7) [tr. at 329].
>
> Dr. Ryan's previous progress notes also reveal some fairly sympathetic statements but contain a scarcity of objective findings to support his conclusions of disability (Exhibits 13-F and 18-F) [tr. at 335 and 383] . . . . On March 22, 2005, Dr. Ryan stated that he had a long treatment relationship with Mr. Rios and that, in a sense, he really did not care about the claimant's leg or his worker's compensation but about Mr. Rios as a person . . . . [Dr. Ryan said] the claimant's only chance is to walk away from his bitterness and anger and to take care of himself (Exhibit 13-F, p.2) [tr. at 336].

(Tr. at 22-23).

12. In affording Dr. Ryan's opinion no significant weight, the ALJ implicitly found that Dr. Ryan's opinion was not entitled to controlling weight. However, even if the ALJ did not err

---

provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion." Langley, 373 F.3d at 1119 (citing Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003)).

in assigning less-than-controlling weight to Dr. Ryan's opinion, the ALJ did not properly weigh Dr. Ryan's treating source opinion utilizing all the factors set forth in 20 C.F.R. § 404.1527.  For example, while the ALJ alluded to the "long treatment relationship" between Dr. Ryan and Plaintiff, the decision did not address the frequency of Plaintiff's visits or "the treatment provided and the kind of examination or testing performed."  Nor is it apparent that the ALJ considered whether Dr. Ryan is a specialist in the area(s) upon which he rendered an opinion.

13.  In addition, the ALJ relied on incomplete or incorrect information in evaluating Dr. Ryan's opinion.  In concluding that Dr. Ryan's opinion was "not consistent with the record as a whole," the ALJ emphasized that Dr. Ritchie found Plaintiff was able to perform light exertional work, apparently referencing Dr. Ritchie's progress note of July 10, 2003.  (See Tr. at 173-74 (giving Plaintiff a work release "for modified duty with no squatting or kneeling . . . limited standing to 30 minutes per hour, [and] moderate work lifting 20 lbs. max").  However, the ALJ failed to address Dr. Ritchie's progress note of September 10, 2003, which provided Plaintiff with a work release "for modified duty, alternate sitting and standing . . . no squatting or kneeling, no climbing, [and] sedentary work lifting 10 lbs. max."  (Tr. at 171).

14.  The ALJ also found that "Dr. Woog's mild to moderate objective findings do not support Dr. Ryan's conclusions."  (Tr. at 22).  The findings to which the ALJ refers are contained in Dr. Woog's note of July 8, 2005 and presumably include: "moderate stiffness and limited range of motion," "mild right scoliosis of the lower thoracic and upper lumbar spine," and "mild to moderate narrowing on the right side [of the L4-5 disk space] without associated osteophyte formation."  (Tr. at 412).  It is not apparent how these findings are inconsistent with or fail to support Dr. Ryan's opinion, particularly when Dr. Woog's note does not include an

assessment of Plaintiff's functional abilities based on these findings.

After noting these findings, Dr. Woog diagnosed Plaintiff with: (1) multifactorial back and left lower extremity pain, status post tib-fib fracture; (2) degenerative disk disease of the lumbar spine; (3) scoliosis of the thoracic and lumbar spine; (4) probable lumbar spondylosis with facette arthropathy; (5) probable left-sided sacral iliac joint arthropathy; (6) chronic pain with opioid dependence; and (7) depression.  Furthermore, after reviewing Plaintiff's medication list, which included percocet, zanaflex, wellbutrin and valium, Dr. Woog "added Neurontin . . . for downregulation for component neuropathic pain."  (Tr. at 411-12).

15.  The ALJ stated that on November 12, 2003, Dr. Esparza "found the claimant's antalgic gait could not be explained by the physiological findings (Ex. 12-F, p.7) [tr. at 329]."  (Tr. at 22).  It is not clear what significance the ALJ attached to this finding.  However, the Court notes that on March 10, 2004, Dr. Esparza also opined that Plaintiff suffers from depression and anxiety, "encouraged [Plaintiff] to continue to use a cane to help," and described Plaintiff's work status as "[s]edentary activity with no significant standing for prolonged periods or walking prolonged periods."  (Tr. at 215-16).  The ALJ's failure to consider or evaluate Dr. Ritchie's opinion of September 10, 2003 and Dr. Esparza's opinion of March 10, 2004 constitutes error.  See 20 C.F.R. § 404.1527(d) (requiring the ALJ to evaluate every medical opinion in the record).

16.  The ALJ apparently adopted the opinion of Dr. Barry Diskant and other members of a panel from the "Medical Evaluation Center" that Plaintiff "is capable of working in the light physical demand category."[7]  (Tr. at 300-22).  However, to the extent that the ALJ finds a

---

[7]Nothing in the record indicates that any of the panel members, which included Barry M. Diskant, M.D., William Chesnut, M.D., and Tomas Granados, PsyD., are treating medical sources.  (See Tr. at 322).

treating physician's opinion to be "inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around."  Goatcher v. United States Department of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995) (quotations omitted).  Although the ALJ discussed the panel's opinion, she did not explain why she concluded that the opinions of Dr. Diskant and/or the panel outweighed contrary opinions offered by Plaintiff's treating physician and psychologist.

17.  Plaintiff also alleges that the ALJ erred in evaluating the opinion of Plaintiff's treating psychologist, Dr. Rapoport.  The ALJ "d[id] not fully credit Dr. Rapoport's conclusions [regarding Plaintiff's mental RFC] because they are conclusory and not supported by objective medical findings such as test data or a mental status exam.  In addition, Dr. Rapoport's conclusions are inconsistent with objective psychiatric findings, including evidence of symptom magnification and non-compliance with treatment, as discussed in more detail below."  (Tr. at 17).  As with Dr. Ryan's opinion, the ALJ implicitly found that Dr. Rapoport's opinion set forth in the "Medical Opinion Re: Ability to do Work-Related Activities (Mental)," dated October 11, 2004, was not entitled to controlling weight.  And as with Dr. Ryan's opinion, the ALJ failed to properly weigh Dr. Rapoport's opinion utilizing all the factors set forth in 20 C.F.R. § 404.1527.

18.  Because the ALJ erred in evaluating the medical opinion evidence, this matter should be remanded for a re-assessment of the medical opinion evidence regarding Plaintiff's physical and mental RFC.

### *Remaining Allegations of Error*

19.  Plaintiff's remaining allegations of error involve the ALJ's assessment of Plaintiff's RFC, credibility and the ALJ's application of the Grids.  However, because a re-assessment of the medical opinion evidence may influence the ALJ's findings with respect to the Plaintiff's

RFC, credibility and the application of the Grids, the Court need not address these allegations of error.  On remand, the ALJ should proceed as necessary, based on her findings following a re-assessment of the medical opinion evidence.

20.  However, should the ALJ reach step five on remand, the Court notes that application of the Grids is particularly inappropriate when evaluating nonexertional limitations such as disabling pain or mental  impairments.  See Glass v. Shalala, 43 F.3d 1392, 1396 (10th Cir.1994); Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993); Hargis v. Sullivan, 945 F.2d 1482, 1490 (10th Cir.1991).  An ALJ "may not rely conclusively on the grids unless [s]he finds (1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level."   Thompson, 987 F.2d at 1488.  These findings, like any determinations of the ALJ, must be supported by substantial evidence.  See Timmons v. Barnhart, 118 Fed.Appx. 349, 353, 2004 WL 2005931, at **4-**5 (10th Cir. Sept. 9, 2004) (not selected for publication in the Federal Reporter) (citing Thompson, 987 F.2d at 1488).

**WHEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Agency Decision **[Doc. No. 13]** is **granted** and this matter is **remanded** to the Commissioner for further proceedings consistent with this decision, to include:

A.     A re-evaluation of the medical opinion evidence; and

B.     Additional proceedings, as necessary, in light of any new findings following a re-evaluation of medical opinion evidence.

_Robert Hayes Scott_
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE